**Kevin ARMSTRONG et al., Plaintiffs,**

v.

**Donald J. O'CONNELL et al., Defendants,**

**Milwaukee Teachers' Education Association, Undesignated Intervenor.**

**No. 65–C–173.**

United States District Court, E. D. Wisconsin.

May 26, 1976.

See also D. C., 416 F.Supp. 1344.

**1328**

Lloyd A. Barbee, Milwaukee, Wis., for named plaintiffs.

Irvin B. Charne, Milwaukee, Wis., for the absent members of plaintiff classes.

L. C. Hammond, Jr., Ross R. Kinney, and Patrick W. Schmidt, Milwaukee, Wis., for defendants.

Curry First, Milwaukee, Wis., for Milwaukee Teachers' Education Association, undesignated intervenor.

## OPINION AND ORDER

REYNOLDS, Chief Judge.

### INTRODUCTION

On January 19, 1976, this Court issued a decision and order in the above-captioned case. The major portion of that decision consisted of findings of fact and conclusions of law which provided the basis for the Court's conclusion that the defendants in this action had intentionally created and maintained unlawful segregation in the public school system of the City of Milwaukee. On the basis of that conclusion, the Court ordered that a partial judgment be entered permanently enjoining the defendants from discriminating on the basis of race in the operation of the public schools of the City of Milwaukee and from creating, promoting, or maintaining racial segrega-

tion in any school or other facility in the Milwaukee school system. The aforementioned partial judgment also ordered the defendants to immediately begin the formulation of plans to eliminate every form of racial segregation from the public schools of Milwaukee, including all consequences and vestiges of segregation previously practiced by the defendants.

In the remaining portions of its decision and order, the Court considered and decided certain related matters. In particular, the Court dismissed as parties to the action certain named plaintiffs and the defendant Board of School Directors, ordered that certain persons be substituted for the defendants originally named in the amended complaint, determined that the remaining plaintiffs could maintain the action on behalf of two designated classes, appointed separate counsel to represent the absent members of the plaintiff classes, and appointed a special master to assist the court in the task of formulating a remedial decree. In addition, the Court adverted to the question of attorneys' fees by indicating that an immediate award of attorneys' fees was authorized by 20 U.S.C. § 1617.

On January 28, 1976, the defendants filed a motion with this court seeking the entry of an order suspending the permanent injunction entered against the defendants pending the resolution of an appeal of the decision and order of January 19, 1976. The defendants also requested that the Court stay all proceedings relating to the payment of costs and counsel fees incurred by the plaintiffs pending resolution of the aforementioned appeal.[1] Finally, the defendants requested that the Court revoke the appointments of the special master and the counsel representing the absent members of the plaintiff classes; in the alternative, defendants requested that the activi-

---

1. On the first page of their motion, the defendants requested that the Court stay the entry of any *order* awarding costs and counsel fees to the plaintiffs. In the body of that motion, however, the defendants expanded their request to include a stay of all *proceedings* relating to the award of fees and costs. The Court will pro-

ceed on the assumption that the defendants seek the latter and more inclusive relief of a stay of proceedings. The Court is buttressed in its conclusion by the fact that the briefs submitted in support of defendants' motion address their arguments to the request for such expanded relief.

ties of these persons be stayed pending the disposition of defendants' appeal.

On February 4, 1976, the United States Court of Appeals for the Seventh Circuit accepted an appeal by the defendants limited to the injunctive portions of the Court's decision and order embodied in the partial judgment entered on January 19, 1976, i. e., the proscription against prospective discrimination and the directive relating to the defendants' formulation of a remedial plan. By an order dated February 9, 1976, the court of appeals established a schedule for defendants' appeal, which together with any cross-appeals will culminate in the hearing of oral argument during the week of June 1, 1976. These appellate actions are mentioned here since they provide the jurisdictional context in which the defendants' motions must be considered.

## JURISDICTION

■ Ordinarily, the taking of an appeal operates to transfer jurisdiction of the case to the court of appeals, and thereafter the district court is without jurisdiction to proceed further in the case. The foregoing rule does not obtain, however, in an appeal from an interlocutory order granting an injunction, and the fact of such an appeal does not divest the district court of jurisdiction to proceed with respect to matters not involved in the appeal. *Janousek v. Doyle,* 313 F.2d 916, 920 (8th Cir. 1963); *United States v. Board of School Commissioners of the City of Indianapolis, Indiana,* 503 F.2d 68, 81 (7th Cir. 1924), cert. denied 421 U.S. 929, 96 S.Ct. 1655, 44 L.Ed.2d 86 (1975).

■ With respect to the interlocutory order of injunction which has been appealed, the general rule of jurisdictional divestiture applies, and it would be improper for this Court to take any action which might be inconsistent with or in derogation of the appellate court's jurisdiction. *Turner v. HMH Publishing Co.,* 328 F.2d 136, 137 (5th Cir. 1964). Rule 62 of the Federal Rules of Civil Procedure recognizes, however, that a trial court may suspend or modify the operation of an interlocutory injunction during the pendency of an appeal therefrom.

*United States v. El-O-Pathic Pharmacy,* 192 F.2d 62, 79 (9th Cir. 1951).

■ Applying these principles to the facts at hand, this Court concludes that it has jurisdiction to consider the defendants' motion for a suspension of those injunctive portions of the partial judgment of January 19, 1976, which are presently on appeal. The remaining items of relief requested by the defendants relate to matters which are independent and not part of the pending appeal, and this Court accordingly is possessed of jurisdiction to consider them fully.

The parties have submitted extensive briefs on the issues raised by the defendants' motion. On the basis of those briefs and the record in this case, the Court has determined that defendants' motion must be denied. In setting out its reasons for this conclusion, it will be helpful to consider separately each item of relief requested by the defendants.

## THE REQUEST FOR A SUSPENSION OF THE PERMANENT INJUNCTION ENTERED AGAINST THE DEFENDANTS

Rule 62(c) of the Federal Rules of Civil Procedure provides:

"When an appeal is taken from an interlocutory or final judgment granting * * * an injunction, the court *in its discretion* may suspend [or] modify * * an injunction during the pendency of the appeal * * *." (Emphasis added.)

■ Defendants have offered the following statement of factors to be considered by this Court in determining whether its discretion should be exercised in favor of a suspension or modification of the injunctive judgment at issue:

"The legal principles by which an application for a stay of an order of a district court pending appeal is to be judged may be simply stated. * * * Briefly stated, a party seeking a stay must show (1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the

public interest will be served by granting the stay." *Long v. Robinson,* 432 F.2d 977, 979 (4th Cir. 1970).[2]

■ The aforementioned factors are *guides* to the Court's exercise of its discretion. By definition, discretion is synergistic, and the criteria in question do not constitute a mechanistic formula. Each factor must be considered in relation to the others, and the interaction of all four must be weighed. Failure to meet one factor may be excused in light of a particularly strong showing with respect to another factor. Similarly, particularly weak showings with respect to all four factors would not necessarily entitle the defendants to the relief they seek. With these considerations in mind, the Court turns to the merits of the motion to suspend the injunction.

■ The first factor—the likelihood of success on appeal—is perhaps the most difficult for this Court to objectively assess. On the one hand, this Court's reading of the applicable law was the basis for its decision to enter the injunction in question. On the other hand, however, "[Rule 62 does] not intend that the District Court may refuse to stay its order upon precisely the same grounds as those on which it issued the order," *Friends of the Earth v. Armstrong,* 360 F.Supp. 165, 196 (D.Utah, 1973), vacated on other grounds 485 F.2d 1 (10th Cir. 1973), cert. denied 414 U.S. 1171, 94 S.Ct. 933, 39 L.Ed.2d 120 (1974), rehearing denied 416 U.S. 952, 94 S.Ct. 1964, 40 L.Ed.2d 303 (1974).

The defendants assert that the Court's decision is deficient in various respects. But the likelihood of prevailing on appeal which this court must assess is the likelihood of success *on the merits.* The defendants' main contention on the merits seems to be that the "neighborhood school policy"

will be sustained on appeal. The concept of "likelihood" encompasses something more than a mere chance of success; in common parlance, "likelihood" means more likely than not. Defendants rest on the "still viable" decision of *Bell v. School City of Gary, Indiana,* 324 F.2d 209 (7th Cir. 1963), cert. denied 377 U.S. 924, 84 S.Ct. 1223, 12 L.Ed.2d 216 (1964), and the Supreme Court's declination to rule directly on the neighborhood school policy in *Keyes v. School District No. 1, Denver, Colorado,* 413 U.S. 189, 93 S.Ct. 2686, 37 L.Ed.2d 548 (1973). Given the totality of the court decisions since *Bell* was decided almost thirteen years ago, the Court must conclude that the legal conclusion attendant to its findings of intentional segregative acts on the part of the defendants is not likely to be obviated by the interposition of the neighborhood school policy.

A second factor which this Court must consider in passing on the defendants' motion is whether the plaintiffs would be substantially harmed in the event that the motion is granted. As previously noted, the Court's injunctive order consists of two parts: (1) an injunction against future discriminatory acts, and (2) an order that the defendants begin the formulation of plans to remedy the effects of past segregation.

In their reply brief, defendants clear up an ambiguity which existed in their original motion by disclaiming any interest in suspending the second part of the Court's order relating to planning efforts. Defendants assert that certain policies and programs adopted by them prior to the entry of this Court's order of January 19, 1976, meet the obligations enunciated in the planning portion of the Court's order, and represent that such efforts will proceed unabated. In light of those efforts, and giving

---

**2.** With respect to the factor first mentioned—whether the movant is likely to prevail on the merits of the appeal—plaintiffs contend that the proper standard to be applied in this circuit is whether the defendants have made a *strong* showing that they are likely to prevail on the merits of their appeal, citing *Adams v. Walker,* 488 F.2d 1064, 1065 (7th Cir. 1973). *Adams* involved a situation where the court of appeals

had been requested to stay a lower court injunction pending the outcome of the appeal. From a reading of *Adams,* however, it cannot be said with certainty that the standard articulated therein is applicable to a trial court's consideration of a request for such a stay. Given this uncertainty, the Court is willing to adopt, for purposes of this decision, the criteria proffered by the defendants.

regard to the fact that the appeal is proceeding on an expedited basis, defendants maintain that the plaintiffs will suffer no injury as a result of the suspension of the first proscriptive part of the court's injunction. The court cannot agree.

Without reaching the question of the adequacy of the planning efforts that are proceeding, the Court would observe that the defendants' argument overlooks the fact that planning *per se* is of little avail should violations of the plaintiffs' constitutional rights continue. The injunction which defendants seek to suspend does no more than direct them to do that which the Constitution demands, or stated conversely, to stop doing that which the Constitution proscribes. Apart from any question of the propriety of permitting the defendants to continue to violate the law, defendants must be able to establish that continued constitutional violations are of no harm to the plaintiffs. This they cannot do.

If the portion of the injunction in question were suspended, the defendants would be free to infringe upon the constitutional rights of the plaintiffs. The importance of those rights should by now be beyond cavil. See, e. g., *Taylor v. Board of Education of City School District of New Rochelle,* 195 F.Supp. 231, 238 (S.D.N.Y.1961), aff'd. 294 F.2d 36 (2d Cir. 1961), cert. denied 368 U.S. 940, 82 S.Ct. 382, 7 L.Ed.2d 339 (1961). Moreover, apart from the question of the temporary deprivation of plaintiffs' rights, the suspension of the injunction might well allow the defendants to take action of a permanent or irrevocable nature, the effect of which would be a more lasting impairment of the plaintiffs' rights. The plaintiffs are entitled to whatever protection of their rights the injunction affords them. The Court cannot agree that its suspension would do them no harm.

The real thrust of defendants' motion to suspend the injunction relates to the two remaining factors—irreparable harm to the defendants, and the public interest. Defendants assert that a multiplicity of complicated and detailed decisions must be made in the course of the day-to-day opera-

tions of the school system. Given that range of decisions, defendants object to the generality of the injunction, claiming that it will have a "chilling effect" on the routine decisionmaking of school officials. The defendants maintain that no one can discern what the injunction mandates with respect to specific decisions, and that the generality of the Court's interdiction creates the risk that the Court may in hindsight judge the actions of the defendants as contumacious.

It would be disingenuous for the Court to claim that its injunction is phrased with great particularity. The injunctive proscription against prospective segregation is of necessity couched in general terms. This Court is not able to anticipate the host of issues which the defendants and their agents will be faced with in the days to come. Even if it could, the fact remains that the defendants are so situated as to be able to determine more readily than the Court the consequences of a given decision. In such circumstances, any attempt to imbue the proscriptive decree with greater specificity would be an exercise in futility.

The Court, however, rejects the defendants' claim that the generality of the Court's injunction makes compliance therewith impossible. Given the Court's finding that unlawful segregation exists in the Milwaukee school system, the Court's order that the defendants cease discrimination on the basis of race requires at a minimum that no action be taken which would have the effect of increasing the degree of racial imbalance in the system. The defendants are also required by the Court's order to abstain from taking any actions which would thwart, frustrate, or otherwise place an obstacle in the way of future desegregation efforts. Cf. *Tasby v. Estes,* 517 F.2d 92, 104–106 (5th Cir. 1975), cert. denied 423 U.S. 939, 96 S.Ct. 299, 46 L.Ed.2d 271 (1975).

Simply stated, the Court's order requires that with respect to any given decision the defendants make a good faith effort to avoid those consequences which this Court has determined violate the law. The Court would emphasize, however, that the re-

quirement of a good faith effort has not been met by a showing that the defendants in good faith disagree with this Court's interpretation of the law. Until such time as the order of this Court is reversed on appeal, the defendants are bound by the Court's decision in this case. *Walker v. City of Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967).

The generality of the Court's injunction is not without precedent. A very similar order was entered by the district court in *Morgan v. Hennigan,* 379 F.Supp. 410, 484 (D.Mass.1974), aff'd sub nom. *Morgan v. Kerrigan,* 509 F.2d 580 (1st Cir. 1974), cert. denied 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975). The Court is convinced that greater specificity is not possible in the circumstances, but it is equally certain that the injunction is not so general as to make compliance therewith impossible.

The Court has carefully considered each of the arguments advanced by the defendants. Measuring those arguments against the legal principles by which an application for stay of an order of a district court pending appeal are to be judged, the Court has concluded that they are insufficient to warrant a suspension of the injunction in question at this time. The Court will accordingly deny the defendants' motion insofar as it seeks such a result.

## THE REQUEST TO STAY PROCEEDINGS ON THE AWARD OF COUNSEL'S FEES AND OTHER COSTS TO THE PLAINTIFFS

The Court's decision and order of January 19, 1976, contained a finding that this lawsuit was necessary to rectify the failure of the defendants to comply with the requirements of the Fourteenth Amendment to the Constitution of the United States, and that an award of costs, including reasonable attorneys' fees, was authorized by 20 U.S.C. § 1617. On January 23, 1976, Lloyd A. Barbee, counsel for the named plaintiffs in proceedings subsequent to January 19, 1976, moved this court for an award of attorney's fees for his services to that date and for payment of services rendered by plaintiffs' expert witness, Dr. Robert P. Stuckert. Defendants thereafter requested that all proceedings be stayed with respect to Mr. Barbee's motion.[3]

Defendants initially challenged the adequacy of the affidavit originally submitted by Mr. Barbee in support of his motion for the award of attorney's fees. That affidavit merely listed documents prepared and conferences attended by Mr. Barbee without indicating the time thereby consumed, and did not contain a sum certain fee request. Defendants challenged the legal adequacy of this affidavit as a basis for an award of fees, a position which the Court agrees was correct. In response to defendants' objection, Mr. Barbee submitted a supplemental affidavit setting forth in detail the dates, hours, and type of services rendered in connection with this case. In all, a fee of $677,587.50 was requested for 13,551-¾ hours of work.

At the outset, it must be emphasized that the Court is not presently concerned with the reasonableness or amount of the fees requested, but only with the defendants' motion for a stay of all proceedings relating thereto. The actual award of fees must await a hearing. See, e. g., *Monroe v. County Board of Education of Madison County, Tennessee,* 505 F.2d 109, 112 (6th Cir. 1974). Before any such hearing may be held, however, it is necessary that the questions of law raised by the defendants' motion be decided.

The first ground advanced by the defendants in support of a stay is that the remaining defendants do not constitute a "local educational agency" within the meaning of 20 U.S.C. § 1617:

"Upon the entry of a final order by a court of the United States against a local educational agency [or] a State (or any agency thereof), * * * for failure to comply with * * * the fourteenth amendment to the Constitution of the United States as [it] pertain[s] to elementary and secondary education, the court,

**3.** See Footnote 1, supra.

in its discretion, upon a finding that the proceedings were necessary to bring about compliance, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

In its decision and order of January 19, 1976, this Court held that the dismissal of the defendant Board of School Directors of the City of Milwaukee was required by *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). The essence of defendants' argument is that the Board's dismissal precluded the entry of an order against a "local educational agency."

■ As a preliminary matter, it should be noted that the statute does not state that attorneys' fees and other costs awarded thereunder must be paid by a local educational agency. Although the entry of an *order* against a local educational agency is a literal prerequisite to the award of fees to the prevailing party, the statute does not limit the class of persons or entities against whom the *award* of fees may be entered. Thus, it has been held that 20 U.S.C. § 1617 authorizes the entry of an award of attorneys' fees and costs against a city, even though the city was neither a "local educational agency," a "state," or an "agency thereof." *Northcross v. Board of Education of Memphis City Schools,* 489 F.2d 19 (6th Cir. 1973), cert. denied 416 U.S. 962, 94 S.Ct. 1982, 40 L.Ed.2d 313 (1974).

■ We come then to the defendants' contention that the dismissal of the defendant Board of School Directors from this case prior to the entry of the Court's order against the individual defendants[4] precludes an award of attorneys' fees under the authority of 20 U.S.C. § 1617. The

absence of a "local educational agency" from the case at the time of the order was the result of the application of the principles set forth in the Supreme Court's decision in *City of Kenosha v. Bruno,* supra, wherein it was held that a municipality was not a "person" for purposes of suit under 42 U.S.C. § 1983. Noting the absence of a Supreme Court decision directly in point, this Court followed the reasoning of certain lower courts and held that a school board was likewise not a "person" for purposes of § 1983.

Defendants seize upon this jurisdictional determination and assert that it is destructive of the plaintiffs' right to recover costs and attorneys' fees pursuant to 20 U.S.C. § 1617. Initially, the Court would note that § 1617 has consistently been liberally construed by the courts in the face of challenges by those advancing more restrictive interpretations. Thus, in *Northcross v. Board of Education of the Memphis City Schools,* 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973), the Supreme Court held that successful plaintiffs in school desegregation cases were entitled to an award of attorneys' fees in the absence of special circumstances rendering such an award unjust. In reaching this result, the Supreme Court gave short shrift to the fact that the statute is literally phrased in terms of permissive discretion.

Similarly, in *Bradley v. School Board of the City of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court held that § 1617 authorized an award of attorneys' fees for services rendered prior to the date that the statute was enacted, and that the phrase "final order" did not preclude the allowance of attorneys' fees

---

4. The defendant school board members are here sued in their official capacity only, and as a practical matter any fee awarded against them would most likely be paid from official school board funds. An award of attorneys' fees against a defendant in his official capacity is based on a theory analogous to that which allows the court to enjoin such a defendant from acting in violation of the Constitution. See *Sims v. Amos,* 340 F.Supp. 691, 695 (M.D. Ala.1972), aff'd. 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972).

Similarly, although it is doubtful that the defendants in this case fall within the scope of the Eleventh Amendment to the United States Constitution, cf. *Burt v. Board of Trustees of Edgefield County School District,* 521 F.2d 1201, 1205, (4th Cir. 1975), the court of appeals for this circuit has recently ruled that that amendment does not bar the assessment of attorneys' fees against state officials sued in their official capacity under 42 U.S.C. § 1983. *Bond v. Stanton,* 528 F.2d 688 (7th Cir. 1976).

incident to the final disposition of interim matters.

Lower courts have been equally liberal in their construction of § 1617 as is illustrated by those cases where attorneys' fees have been awarded pursuant to the statute to those successfully challenging unlawful teacher discharges. See, e. g., *United States v. Coffeeville Consolidated School District,* 365 F.Supp. 990 (N.D.Miss.1973), modified on other grounds, 513 F.2d 244 (5th Cir. 1975).

The Court has been unable to find any salient factor which might impede the thrust of this consistent policy of liberal construction. The Court has examined the legislative history of the bill enacting § 1617, and the only reference therein to § 1617 is not supportive of the limiting construction defendants advance. In Senate Conference Report 92–798, May 22, 1972, reprinted at 1972 U.S.Code Congressional and Administrative News 2608, the following paragraph appears at 2668:

"*Attorney fees.*—The Senate amendment, but not the House amendment, authorized the payment of attorneys fees to successful plaintiffs in suits brought for violation of this title, Title VI of the Civil Rights Act, or the fourteenth amendment to the Constitution. The conference substitute contains this provision."

This Court is unwilling to attribute to Congress an intent to make fee awards dependent upon whether the relevant order

issues against a local educational agency *per se,* or against the individual members of that agency's governing board insofar as they act in their official capacities. As a practical matter, the two are one and the same; only those schooled in the abstract intricacies of jurisdiction theory detect a difference. If such distinctions were in the mind of Congress at the time § 1617 was passed, Congress would not only be erudite in the law but also prescient—§ 1617 was enacted on June 23, 1972, almost a full year before *Bruno* was decided by the Supreme Court on June 11, 1973.

That is not to say, however, that the status of school boards as § 1983 persons was laid to rest by *Bruno.* As Judge Tjoflat noted in his decision in *Adkins v. Duval County School Board,* 511 F.2d 690, 694–696 (5th Cir. 1975), the Supreme Court itself in at least three pre-*Bruno* cases and two post-*Bruno* cases reached the merits of claims against school boards without reaching the jurisdictional issue. Judge Tjoflat points out that the presence of parties other than the school board in those cases precluded the "personhood" of the school from being a decisive issue.

For the foregoing reasons, this Court holds that the absence of the school board as a defendant against whom the Court's order has issued does not bar the plaintiffs' recovery of attorneys' fees pursuant to 20 U.S.C. § 1617 where there remain as defendants in the action the individual members of the school board sued in their official capacities.[5]

5. An award of attorneys' fees might also be based on the inherent equitable powers of this court. In the recent decision of *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court held that it was the province of Congress to carve out exceptions to the "American rule" that attorneys' fees are not ordinarily recoverable by the prevailing party in federal litigation. In that case, the Supreme Court relied heavily on the fact that the "American rule" had been statutorily embodied in 28 U.S.C. §§ 1920 and 1923(a). If the limitation on the court's authority to award fees is statutory in origin, it is not an unreasonable rule to require that exceptions to that statutory limitation be of legislative and not judicial origin. Where, however, the literal words Congress has chosen do not accomplish the legislative purpose as a result of superven-

ing judicial determinations, it may well be that the judicially frustrated statute is an expression of congressional intent sufficient to free the court of the statutory circumscriptions which otherwise limit its equitable authority to award attorneys' fees.

Alternately, an award of attorneys' fees might be authorized by the "bad faith" doctrine which holds that such fees may be awarded when the losing party has acted in bad faith. *Alyeska* did not disturb this time-honored doctrine. 421 U.S. 240, 258–259, 95 S.Ct. at 1622, 44 L.Ed.2d at 154. Since § 1617 was enacted, the bad faith doctrine has been utilized in school desegregation cases as an independent basis for the award of attorneys' fees. See, e. g., *Henry v. Clarksdale Municipal Separate School District,* 480 F.2d 583 (5th Cir. 1973); *United States v. State of Texas,* 495 F.2d 1250

■ As a second ground in support of a stay of proceedings relating to the award of attorneys' fees, the defendants suggest that the Court's order of January 19, 1976, is not a "final order" for purposes of the statute. Defendants have failed, however, to cite any authority which would detract from the authority of the Supreme Court's statement that "the entry of *any* order that determines *substantial rights* of the parties may be an appropriate occasion upon which to consider the propriety of an award of counsel fees in school desegregation cases." *Bradley v. School Board of the City of Richmond,* 416 U.S. 696, 723 n. 28, 94 S.Ct. 2006, 2022, 40 L.Ed.2d 476, (1974) (emphasis added). As the Supreme Court went on to observe in that case at 723, 94 S.Ct. at 2022:

> "To delay a fee award until the entire litigation is concluded would work substantial hardship on plaintiffs and their counsel, and discourage the institution of actions despite the clear congressional intent to the contrary evidenced by the passage of [§ 1617]. A district court *must* have discretion to award fees and costs incident to the final disposition of *interim* matters." (Emphasis added.)

■ The above-quoted language also disposes of defendants' third argument which is that the pendency of an appeal deprives the plaintiffs of their status as a "prevailing party." Defendants assert that *Johnson v. San Francisco Unified School District,* 500 F.2d 349 (9th Cir. 1974), supports such a conclusion. In that case, the court of appeals vacated the lower court's fee award at the same time as it vacated and remanded the lower court's decision for the plaintiffs on the merits. Defendants fail to indicate how *Johnson* differs in kind from such cases as *Medley v. School Board of the City of Danville, Virginia,* 482 F.2d 1061 (4th Cir. 1973), cert. denied 414 U.S. 1172, 94 S.Ct. 933, 39 L.Ed. 120 (1974).

(5th Cir. 1974). Whether an award of attorneys' fees in the instant action would be appropriate in light of the unique dimensions which the bad faith doctrine assumes in the school desegregation context is, however, a question

There the court of appeals' remand of a district court decision unfavorable to the plaintiffs was accompanied by a direction that the district court allow the plaintiffs reasonable attorneys' fees upon the remand. Be that as it may, defendants position— that a party is not a "prevailing party" until all succeeding appeals have successfully been weathered—would run contrary to the various factors which the *Bradley* court relied upon in authorizing the award of fees incident to the entry of an interim order determining substantial rights of the parties.

The foregoing arguments advanced by the defendants relate to the plaintiffs' legal right or entitlement to an award of attorneys' fees. In contrast, defendants last and perhaps most strenuously advanced argument goes to timing, i. e., that in the eventuality of a court order granting the plaintiffs' request for attorneys' fees, the defendants might have to disburse funds which they fear will be unrecoverable should they eventually prevail on appeal. Such an argument would be more appropriately addressed to the Court in support of a request to stay execution on a judgment awarding attorneys' fees rather than to a request for a stay of all proceedings relating thereto.[6] No doubt the defendants will strenuously contest the size and accuracy of the fee claim submitted by Mr. Barbee. If that be the case, it may well be that proceedings relative to the award of attorneys' fees will not culminate in an order awarding fees until after appellate proceedings run their course. The defendants' concern in this regard is accordingly premature at this time.

For the foregoing reasons, the Court concludes that the defendants are not entitled to a stay of all proceedings relating to the award of counsel's fees and other costs to the plaintiffs.

which the Court need not reach in light of its conclusion that attorneys' fees are recoverable pursuant to § 1617.

6. See Footnote 1, supra.

## THE REQUEST TO REVOKE THE APPOINTMENT OF THE SPECIAL MASTER

In its decision and order of January 19, 1976, the Court appointed a special master to conduct hearings and other proceedings with a view towards making a recommendation to the Court with respect to the question of an appropriate remedial decree.

Defendants now move for the revocation of that appointment, asserting that it is invalid for four reasons: (1) it is contrary to the dictates of Rule 53 of the Federal Rules of Civil Procedure; (2) it is an unprecedented and inappropriate delegation of a judicial function; (3) the appointment is premature; and (4) it places an undue burden on public funds.

Before turning to a consideration of the merits of the defendants' objections, it is necessary to define the nature of the special master's office. The special master has been directed to assist the court in the development of a plan for the desegregation of the Milwaukee public schools. At a minimum, he must evaluate the desegregation plans submitted by the parties and other interested individuals and organization, and in the event that such plans fail to fully express the options which are available to the Court, he is authorized to formulate alternative proposals. Thereafter, the special master is to submit to the court a report which should include an evaluative summary of the various plans he has considered and a recommendation that a particular plan or an amalgamation of different plans be adopted.

It should be evident from this brief recitation of the special master's duties that his role and his function are not comparable to the more limited responsibilities which persons of like title customarily perform in the context of private civil litigation. This is not a situation where the Court has appointed a person to perform an accounting or compute damages, and it would be erroneous to attempt to delineate the authority of the special master in this case by reference to such situations. As used in this case, the title of "special master" denotes the particular powers and functions which have been assigned to persons holding similar positions in other school desegregation cases. The defendants' objections to the appointment of a special master will accordingly be considered in light of the law developed in those desegregation cases.

The defendants' first and second objections will be considered as one, for the allegation that the special master's appointment constitutes an impermissible delegation of judicial authority dovetails with the contention that his appointment was beyond the authority of this court.

Although the fact that district courts confronted with the task of formulating a decree for the desegregation of a public school system have appointed persons to assist them in the endeavor is not dispositive of the question of authority the frequency of such appointments is not altogether without significance. See, e. g., *Swann v. Charlotte-Mecklenburg Board of Education,* 306 F.Supp. 1291, 1313 (W.D.N. C.1969): "consultant" designated to prepare school desegregation plans and to make recommendations to the court; *Keyes v. School District No. 1, Denver, Colorado,* 380 F.Supp. 673, 684 (D.Colo.1974): "expert" appointed to assist court in formulating a plan of desegregation; *Hart v. Community School Board of Brooklyn, New York School District # 21,* 383 F.Supp. 699, 758–769 (E.D.N.Y.1974): "special master" appointed to prepare remedial plans and to coordinate the planning efforts of the parties; *Bradley v. Milliken,* 402 F.Supp. 1096, 1104 (E.D. Mich.1975): three "experts" appointed to evaluate plans submitted by the parties and to prepare alternatives thereto; *Morgan v. Kerrigan,* 401 F.Supp. 216, 227 (D.Mass. 1975): panel of four "masters" appointed to hold hearings and to make recommendations to the Court as to a desegregation plan, with two "experts" providing assistance to the masters and the Court.

In *Hart v. Community School Board of Brooklyn, supra,* Judge Weinstein wrote a scholarly and thoughtful supplemental opinion in which the question of a district court's authority to appoint a special master

respecting remedy in a school desegregation case was thoroughly considered. The unique character of the special master's role in such circumstances can be seen from Judge Weinstein's description of the duties of the special master appointed in that case:

> "The coordination of scores of agencies, officials and private persons and groups in developing a workable plan will require patient and understanding consultation. The role of coordinator is not one suited to a court which can best preside at an adversary hearing devoted to a specific plan." 383 F.Supp. 699, 762.

> "The expert in this case must assist the court by coordinating and evaluating remedial proposals that defendants and others are in the process of preparing pursuant to court order. He must serve an investigatory and consultative function among the parties and advise this court in technical areas so it may approve an effective remedial order. In a sense, he must bridge the gap between the court as impartial arbiter of plans placed before it and advocates protecting their clients' positions that are often narrower than that of society at large. This is a complex task * * *." 383 F.Supp. 699, 764.

> "Rule 53's requirement that the case referred to a master be 'exceptional' is more than satisfied when a court is faced with a polycentric problem that cannot easily be resolved through a traditional courtroom-bound adjudicative process. * * * Any solutions will involve a multitude of choices affecting allocation of educational, housing and other resources, and each choice will affect other choices. Such many-centered problems call for informal consultations and weighing of complex alternatives using a managerial decision-making process. * * *" 383 F.Supp. 699, 766.

Judge Weinstein was fully cognizant that "the mechanism of special master is not commonly employed in such a flexible and informal way," but concluded that such an official could be appointed "pursuant to Rule 53 of the Federal Rules of Civil Procedure and the inherent powers of the court." 383 F.Supp. 699, 767.

In appeals from the substantive portions of the aforementioned district court cases, reviewing courts have made mention of the district court's appointment of a "special master", "expert", or "consultant" without indicating in any way that such appointments were improper. See, e. g. *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 8–9, 91 S.Ct. 1267, 1272, 28 L.Ed.2d 554, 562 (1971); *Hart v. Community School Board of Brooklyn, New York School District # 21,* 512 F.2d 37, 42 (2d Cir. 1975); *Morgan v. Kerrigan,* 523 F.2d 917, 921–922 (1st Cir. 1975).

It appears that the district court's authority to make such appointments has been directly questioned and considered in only one appellate proceeding. In *United States v. Board of School Commissioners of the City of Indianapolis,* 503 F.2d 68, 75–78 (7th Cir. 1974), cert. denied 421 U.S. 929, 95 S.Ct. 1654, 44 L.Ed.2d 86 (1975), the defendant board challenged the district court's authority to appoint a two-man commission to prepare a desegregation plan and to order the temporary assignment of the board's professional planning staff to the service of that commission. The court of appeals concluded that "the district court acted properly in * * * appointing the commission and in * * * assigning the planning staff * * * to the commission." 503 F.2d 68, 78.

Although the foregoing cases seem to establish the authority of this Court to make an appointment of this kind and nature, there remains the defendants' troubling suggestion that in so doing this Court is improperly delegating a judicial function. There are well-defined limits beyond which a district court may not properly proceed in delegating certain functions. Thus, in *TPO, Inc. v. McMillen,* 460 F.2d 348 (7th Cir. 1972), the court of appeals issued a writ of mandamus prohibiting a district court judge from delegating to a magistrate the power to decide a motion to dismiss. Similarly, in *LaBuy v. Howes Leather Co.,* 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290, rehearing denied 352 U.S. 1019, 77 S.Ct. 553, 1 L.Ed.2d 560 (1957), the Supreme

Court held that it was an abuse of discretion for a district court judge to refer a case to a special master for purposes of proceedings which would have in effect amounted to a trial on the merits. On the other hand, it has been held that a district court can properly delegate to a magistrate the power to make initial findings in connection with a complicated motion for a preliminary injunction. See *C. A. B. v. Carefree Travel, Inc.*, 513 F.2d 375 (2d Cir. 1975). And just recently, the Supreme Court ruled that a magistrate can be assigned the duty of preparing a preliminary evaluation of the record in actions to review administrative determinations regarding entitlement to social security benefits so long as the district court judge making the reference retains ultimate decision-making responsibility. See *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483, 44 U.S.L.W. 4065 (1976).

The court must consider the defendants' suggestion that the appointment of a special master in this case constitutes an impermissible delegation of judicial authority in light of the principles established by the foregoing cases. In so doing, however, the unique dimensions of the special master's role must be kept in mind. Here, a trial on the merits has already been held before the district court and a decision on the merits has been rendered. The case is now at that stage of the proceedings where it is necessary that plans be developed and presented to the Court for its consideration. The Court has asked the special master to assist in the development of such plans and to make a preliminary evaluation of the merits of each, but it is clear that the Court has not thereby delegated to him ultimate decision-making power on the question of an appropriate decree.

In this regard, the Court finds instructive the Supreme Court's decision in *Mathews v. Weber, supra.* There, the Court distinguished *LaBuy v. Howes Leather Co., supra,* by noting that a master's findings of fact are reviewed by the district court under the "clearly erroneous" test of Rule 53(e) of the Federal Rules of Civil Procedure. In contrast, the Court emphasized that the magistrate in *Mathews* was acting under the authority of 28 U.S.C. § 636(b) and not as a Rule 53 master. As a result, the magistrate's recommendation would be entitled to "only such weight as its merit commands and the sound discretion of the judge warrants." 423 U.S. 261, 275, 96 S.Ct. 549, 556, 46 L.Ed.2d 483, 44 U.S.L.W. 4065, 4069.

In a similar manner, it should be recognized that the special master herein involved is functioning as something other than a traditional Rule 53 master. He has not been directed to make "findings of fact," but rather, he has been asked to report to the Court with respect to the question of a remedy. In similar circumstances, the Court of Appeals for the First Circuit has realized that the presumptive validity of Rule 53(e)(2) does not attach to such a report:

"* * * [The defendants] argue first that Rule 53(e)(2) of the Federal Rules of Civil Procedure requires that the court 'accept the master's findings of fact unless clearly erroneous'. This section of the rule has reference to actions tried without a jury, i. e., where the master is to a large extent supplanting a judge as a finder of facts. As to those facts, but not the legal conclusions to be drawn therefrom, the master's findings are more than advisory. *Even if the reference here was of this type,* the district court could then hear objections to the report and receive further evidence, as the court below did in this case. 'The court after hearing may adopt the report or may modify it or may reject it in whole or in part . . . .' Rule 53(e)(2). *But the reference here was not a substitute for trial, a trial on the merits of the case having already been completed.* This was a reference under Rule 53(c) specifying and limiting the powers of the masters to 'report only upon particular issues . . to receive and report evidence.' *The district judge could not delegate his duty to evaluate for himself what actions had to be undertaken in order to remedy past failure to comply with the Constitution.*"

*Morgan v. Kerrigan,* 523 F.2d 917, 921–22 (1st Cir. 1975) (emphasis added).

The responsibilities assigned to the special master in this case are not unlike those which Judge Austin assigned to a master in *Gautreaux v. Chicago Housing Authority,* 384 F.Supp. 37 (N.D.Ill.1974). There, the master was directed "to study and review the existing patterns of racial segregation in Chicago public housing, * * * and to recommend a plan of action that will expedite the realization of [the Court's] various orders and judgments." 384 F.Supp. 37, 38. Claiming that the reference constituted an abdication of judicial decisionmaking responsibility, the defendants sought a writ of mandamus vacating the reference from the Seventh Circuit Court of Appeals. In refusing to grant the writ, the Court relied upon the particular and unique nature of the role assigned to the master:

> "* * * It can well be argued that the proceeding before the Master is limited to preliminary inquiry and the result to recommendations as to steps the court itself might consider initiating.
>
> "*The district court appears to be seeking assistance in exploration of possible alternative courses in a difficult area.* The memorandum which was a preface to the order stated that 'this matter must be referred to a Master for immediate attention and proposals.' The order, in terms, does not require the Master to make findings of fact and conclusions of law (See Rule 53(e)(1), F.R.Civ.P.) and refers to the Master's draft report, to be discussed with the parties, as 'a final draft of his recommendations and comments.' The order says that the 'final Report, as determined by the Master, shall be submitted to the Court for its review and possible use.' In colloquy, Judge Austin said, 'I think my order indicates I retained the ultimate responsibility.'" *Chicago Housing Authority v. Austin,* 511 F.2d 82, 83 (7th Cir. 1975) (emphasis added).

So too in this case is the Court "seeking assistance in exploration of possible alternative courses in a difficult area." This assistance is not inherently judicial in nature, and the Court accordingly concludes that the special master's appointment in this case does not constitute an impermissible delegation of a judicial function.

▇▇▇ Like the first two grounds advanced by the defendants in support of their request for a revocation of the special master's appointment, the defendants' last two contentions are closely related. In arguing that the appointment of a special master is premature at this time, defendants point out that masters have not been appointed in other cases until after the parties have submitted plans and the Court has concluded that those plans are inadequate. At a minimum, the defendants continue, the appointment of a special master should await the outcome of the pending appeal of this Court's finding of constitutional liability. The Court has carefully considered these two arguments and finds them unavailing.

In its decision and order of January 19, 1976, the Court recognized that other courts had withheld the appointment of a special master until after plans and proposals for desegregation had been submitted by one or both of the parties. This Court, however, was of the opinion that justice would be best served by the appointment of a master at the outset of the task. It was the hope of the Court that the master and the parties would cooperate with each other in developing an acceptable plan.

▇▇▇ In *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 16, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 524 (1971), the court observed:

> "* * * Remedial judicial authority does not put judges automatically in the shoes of school authorities whose powers are plenary. Judicial authority enters only when local authority defaults.
>
> "* * * In default by the school authorities of their obligation to proffer ' acceptable remedies, a district court has broad power to fashion a remedy that will assure a unitary school system."

The existence of a constitutional violation does not put the district court in the busi-

ness of running a school system. The district court's only legitimate concern is to see to it that the constitutional violation is corrected. As a practical matter, local school officials should have a "first crack" at coming up with a desegregation remedy, not only in recognition of the fact that they are possessed with the resources to develop a plan and are best situated to be able to deal with the intricacies of school operations, but also because they have the authority to include in such a plan various educational components that are beyond and outside of the competence of this court. For these reasons, it has been held that "[o]rdinarily, the court will not substitute its discretion for that of a board of education but will adopt a plan proposed by the board if it fulfills the board's duty to eliminate the effects of past illegal conduct." *Davis v. School District of the City of Pontiac, Inc.,* 443 F.2d 573, 577 (6th Cir. 1971), cert. denied 404 U.S. 913, 92 S.Ct. 233, 30 L.Ed.2d 186 (1971).

At the same time, however, the Supreme Court has instructed district courts to consider school board plans "in light of any alternatives which may be shown as feasible and more promising in their effectiveness." *Green v. County School Board of New Kent County,* 391 U.S. 430, 439, 88 S.Ct. 1689, 1695, 20 L.Ed.2d 716 (1968).

The appointment of a special master at the outset of the remedial stage of a school desegregation case does not conflict with any of the preceding principles. The appointment of a master does not foreclose the defendants from coming forth with a remedial plan, and the Court's evaluation thereof will be enhanced by the master's elucidation of practical alternatives. If the defendants' plan is constitutionally adequate, it will be accepted by the Court and the master will have served a valuable purpose.

The Court must also provide, however, for the possibility that a constitutionally adequate plan will not be forthcoming from the defendants, in which case the Court is required to devise its own remedial decree. If the Court were to wait until that eventu-

ality before seeking the assistance of a special master, the result would almost certainly be unacceptable delay, or the equally unattractive prospect of a hastily conceived and shortsighted remedial plan.

The invocation of the Court's remedial authority is improper prior to a default by the defendants in their constitutional obligations. But the appointment of the special master is not so much an invocation of this Court's remedial authority as it is an exercise of this Court's power to insure the orderly administration of justice. The Court concludes that the master's appointment prior to the submission of a desegregation plan by the defendants is both practically necessary and legally permissible.

The defendants' contention that the master's appointment should await the outcome of the pending appeal is similarly unpersuasive. As previously noted in this opinion, the Court is unconvinced that the defendants are likely to prevail upon the merits on appeal. Planning efforts should not be held in abeyance pending an appeal, *Bradley v. School Board of the City of Richmond, Virginia,* 456 F.2d 6 (4th Cir. 1972), and the Court believes that the special master is an essential part of such efforts.

For the aforementioned reasons, the Court will deny defendants' request that it revoke the appointment of the special master.

## THE REQUEST TO REVOKE THE APPOINTMENT OF COUNSEL TO REPRESENT THE ABSENT MEMBERS OF THE PLAINTIFF CLASSES

In its decision and order of January 19, 1976, the Court determined that this action could be maintained on behalf of the two plaintiff classes alleged in the amended complaint. The first class was defined to include all black pupils presently enrolled and those black pupils who will in the future become enrolled in the Milwaukee public school system. The second class was defined to include all nonblack pupils presently enrolled and those nonblack pupils who will in the future become enrolled in the Milwaukee public school system.

In the process of certifying these two classes, the Court concluded that a single lawyer could not adequately represent the interests of the absent members of the plaintiff classes in subsequent proceedings. The Court accordingly appointed separate counsel to represent the absent members of the plaintiff classes. (Decision and order of January 19, 1976, pp. 4–13.)

The defendants now seek to have this appointment revoked. The defendants assert (1) that there is no precedent for such an appointment, (2) the counsel for the absent members of the plaintiff classes is representing potentially diverse and conflicting interests, and (3) the appointment imposes a financial burden on the defendants.

 The Court will not dwell at length on the first point raised by the defendants. The Court was fully aware and forthrightly acknowledged the absence of direct precedent for the action it took (decision and order of January 19, 1976, p. 11), but nevertheless concluded that the appointment of counsel was fully consistent with the spirit of Rule 23 of the Federal Rules of Civil Procedure. *Id.*, at 9. The Court reiterates and rests upon its extensive discussion of this issue in its prior opinion. *Id.*, at 7–12.

The issue underlying defendants' second contention has also been previously recognized by the Court:

"* * * The Court is not unmindful of the fact that [both the named plaintiffs' counsel and counsel for the absent members of the plaintiff classes] will be representing members of two separate classes. At the present time, it does not appear that the interests of these two classes are in any way antagonistic, or that the interests of either class will be prejudiced by counsel's representation of both. * * * If in the course of future proceedings it appears that the interests of these two classes diverge, the Court will entertain a motion for the appointment of separate counsel for each class." Decision and order of January 17, 1976, p. 13.

 The defendants contend that the Court's designation of two classes constitutes an implicit recognition of an antagonism of interests. The designation of two classes in this case, however, is no more dispositive of the existence *vel non* of conflicting interests than was Judge Bauman's designation of two subclasses in *Brandt v. Owens-Illinois, Inc.*, 62 F.R.D. 160 (S.D.N.Y. 1973). In that case, having designated subclasses, Judge Bauman proceeded to state at 171–172:

"I perceive no conflict here: both subclasses have a common interest in establishing the defendant's failure to comply with its corporate charter. * * *"

In appointing counsel to represent members of both classes, this Court was acting in the belief that both classes have an identical interest in seeing that the defendants adhere to the requirements of the Constitution in their operation of the Milwaukee public school system.

The two class scheme was first advanced by the plaintiffs in their complaint. The Court adopted that structure in recognition of the fact that an actual conflict of interest would be more readily apparent and thus more quickly discovered if the latent fissures and faults in an amalgamation of interests were brought to the fore of the consciousness of both Court and counsel. If the potential differences thus highlighted were to become actual, substitution of counsel would of course become necessary. It only seems prudent, however, to withhold such action pending a concrete and specific showing that the interests of the two classes diverge. The defendants claim merely that the interests of the certified classes *might* diverge; that bare potentiality is insufficient at this time to warrant the appointment of separate attorneys to represent the interests of the members of each class.

 The defendants' last contention is that the Court's appointment of counsel to represent the absent members of the plaintiff classes is financially burdensome. This objection could be construed as an indirect challenge to 20 U.S.C. § 1617, pursuant to which defendants will be required to pay the plaintiffs' costs and expenses, including

reasonable attorneys' fees. It is not for this Court to second-guess Congress when the latter determines that compliance with the Constitution may be hastened if those who violate the Constitution are required to pay the attorneys' fees of those who successfully challenge their illegal practices. Even if it were, this Court would find persuasive the considerations which the Supreme Court relied upon in rejecting a "financial burden" challenge to the statute:

"In this case the parties consist, on the one hand, of the School Board, a publicly funded governmental entity, and, on the other, a class of children whose constitutional right to a nondiscriminatory education has been advanced by this litigation. The District Court rather vividly described what it regarded as the disparity in the respective abilities of the parties adequately to present and protect their interests. Moreover, school desegregation litigation is of a kind different from 'mere private cases between individuals.' With the Board responsible for the education of the very students who brought suit against it to require that such education comport with constitutional standards, it is not appropriate to view the parties as engaged in a routine private lawsuit. In this litigation the plaintiffs may be recognized as having rendered substantial service both to the Board itself, by bringing it into compliance with its constitutional mandate, and to the community at large by securing for it the benefits assumed to flow from a nondiscriminatory educational system. * * *" Bradley v. School Board of the City of Richmond, 416 U.S. 696, 718, 94 S.Ct. 2006, 2019, 40 L.Ed.2d 476 (1974).

By appointing counsel to represent the absent members of the plaintiff classes, the Court imposed no greater financial burden on the defendants than that already imposed by statute. The defendants contend to the contrary, asserting that there are now two attorneys where before there was but one. This argument, however, cannot withstand close scrutiny. A second attorney was appointed because the Court had concluded that subsequent proceedings would require more work than one man could handle. If separate counsel had not been appointed to represent the absent members of the plaintiff classes, counsel for the named plaintiffs would have had to have hired additional lawyers to meet the increased workload occasioned by simultaneous appellate and remedial proceedings. The financial burden on the defendants would have been the same.

The only alternative which would diminish the defendants' financial burden would be for the named plaintiffs' counsel to continue to single-handedly represent the plaintiff classes. Yet the Court has previously held that the interests of the absent members of the plaintiff classes could not have been adequately represented by a single attorney after January 19, 1976. The cost of reducing the defendants' financial burden with respect to attorneys' fees would thus be the inadequate representation of the absent class members. To state the proposition is to reveal its weakness. Given the fiduciary obligation which the Court owes to absent class members, it is a proposition which the Court cannot accept.

For the foregoing reasons, the defendants' request to revoke the appointment of counsel to represent the absent members of the plaintiff classes will be denied.

THE REQUEST IN THE ALTERNATIVE TO STAY THE ACTIVITIES OF THE SPECIAL MASTER AND COUNSEL FOR THE ABSENT MEMBERS OF THE PLAINTIFF CLASSES UNTIL THE PENDING APPEAL HAS BEEN DECIDED

The defendants assert two grounds in support of their request for a stay of the activities of the special master and counsel for the absent members of the plaintiff classes: (1) that pending an affirmance of the Court's decision on the merits, any activity on their part is unnecessary, and (2) that in the event of a reversal of that decision, a refusal to stay their activities in the interim will result in the payment of

fees and expenses which may not be recoverable.

 The defendants' first argument is unpersuasive. The services of counsel for the absent members of the plaintiff classes are needed *most* during the pendency of the appeal; indeed, it was the likelihood of an appeal and remedial efforts proceeding simultaneously that initially led the Court to the conclusion that the appointment of such counsel was required. (Decision and order of January 19, 1976, p. 8.)

 Similarly, it cannot be successfully maintained that the services of the special master are not needed at this time. The Court has previously determined that the postponement of planning and other remedial efforts during the pendency of an appeal would unconscionably delay the vindication of the plaintiffs' constitutional rights. The services of the special master are essential to the success of those remedial efforts.

 Defendants argue that such efforts will be rendered superfluous by an appellate reversal of this Court's original decision. As the Court has previously determined, however, it is not likely the defendants will prevail on the merits on appeal. The appeal process exists so that error may be corrected; it does not, however, constitute an open-ended invitation for delay. This Court might be reversed on appeal, but until that time the case before it must go forward.

 The defendants' second argument—that they might not be able to recover the expenses incurred by the special master and counsel for the absent members of the plaintiff classes in the event the defendants' appeal succeeds—is admittedly more troublesome than their first. The loss the defendants would sustain in the event of a reversal, however, must be weighed against the harm plaintiffs would suffer if a stay is granted and the appeal is denied. The Court concludes that the potential harm to the plaintiffs outweighs the potential harm to the defendants, and, accordingly, will deny the request for a stay of the activities of the special master and counsel for the absent members of the plaintiff classes.

## CONCLUSION

In the school desegregation cases, the courts have been confronted with the single most perplexing problem facing urban communities. It is, of course, not the function of this Court to oversee the methods by which children are educated, or to advance by judicial fiat a particular social philosophy. It is, however, the duty of this Court to see to it that the Constitution is obeyed. When local school officials default in their constitutional obligations, the federal courts are open to persons seeking judicial redress.

Through the prism of the courts, one of society's most troubling problems has been translated into legal language and reduced in scope to the dimensions of a lawsuit. But only those incapable of distinguishing form from substance would contend that the matter before the court is an ordinary lawsuit. This is not an action on a contract or an automobile negligence case—it is a suit to desegregate one of the fifteen largest public school systems in the United States. The very uncommonness of the proceedings' subject matter suggests that traditional procedural devices may prove to be insufficient.

The Court is committed to solving the constitutional problem herein involved. In attempting to reach that end, the Court has decided that the services of a special master and separate class counsel are needed. These appointments are challenged by the defendants who argue that the Court's actions are novel and unconventional. While the Court would admit that such procedural steps are not ancient and wizened, it believes they are authorized and sanctioned by the existing case law in this area. The Court assumes that all parties to this litigation will be ill-served by an approach which places conventionality of means above the end of justice. To whatever extent, however, that the Court's actions are unprecedented, the Court believes that the following remarks by Judge Evans are relevant:

**1344**

" * * * [T]he other contentions of the defendant * * * all seem to grow out of the age-old philosophy—'whatever is, is right.' Probably no institution has given life and breath to this thought as freely as the judiciary. They are ever looking for precedents, as they should be. If none be found, however, they may not give up,—lost in darkness. The situation is not hopeless. * * * [I]f no precedents be found, courts can hardly be advisedly called radical if they indulge in lawmaking by decisions, or in a word, engage in judicial empiricism." *Daily v. Parker,* 152 F.2d 174, 177 (7th Cir. 1945).

The problem the Court faces is too serious to allow the absence of time-honored precedent to foreclose the use of procedural devices necessary to its solution.

IT IS THEREFORE ORDERED that the defendants' motion to (1) suspend the permanent injunction entered against the defendants pending the resolution of an appeal from the Court's decision and order of January 19, 1976, (2) stay the entry of any order regarding the payment of any costs or counsel's fees incurred by the plaintiffs pending appeal (3) revoke the appointment of the special master, and (4) revoke the appointment of counsel to represent the absent members of the plaintiff classes shall be and it hereby is denied.

IT IS FURTHER ORDERED that defendants' alternative request for a stay of the activities of the special master and of counsel representing the absent members of the plaintiff classes until after the defendants' pending appeal has been decided shall be and it hereby is denied.