ALEXIS I. du PONT SCHOOL DISTRICT et al. *v.*
EVANS et al.

No. A-188.   Decided September 8, 1978

Mr. Justice Rehnquist.

Applicants, seven defendant suburban school districts in the area of Wilmington, Delaware, have requested that I stay execution of the judgment and mandate of the Court of Appeals for the Third Circuit in this case pending consideration by this Court of their petition for certiorari.[*]

Mr. Justice Brennan denied the application for a stay one week ago, on September 1, 1978, *Buchanan* v. *Evans, ante,* p. 1360.   Although earlier this summer I granted a stay in *Columbus Board of Education* v. *Penick, ante,* p. 1348, after it had been denied by Mr. Justice Stewart, I have decided to deny this application.   Since my reasons are somewhat different from those expressed by Mr. Justice Brennan in his opinion, I shall state them here.

---

[*]The Delaware State Board of Education joined in the application to Mr. Justice Brennan, but has now advised the Clerk's Office that because of the shortness of time it does not join in the reapplication to me.   It has advised the Clerk, however, that it does intend to petition for certiorari for review of the judgment of the Court of Appeals for the Third Circuit. Intervenor, Alfred I. du Pont School District, also does not join in this reapplication.

As MR. JUSTICE BRENNAN noted, the District Court earlier in this litigation found interdistrict violations on the part of several of the independent school districts located in New Castle County. It also declared unconstitutional a Delaware statute granting to the State Board of Education the authority to reorganize school districts within the State, but exempting from the operation of the statute the Wilmington School District. The judgment of the District Court was summarily affirmed without an opinion by this Court over three dissents. *Buchanan* v. *Evans,* 423 U. S. 963 (1975). For the reasons expressed in my dissent in that case, I cannot agree with my Brother BRENNAN that the unexplicated summary affirmance renders the District Court's finding that "this dual school system has been perpetuated through constitutional violations of an interdistrict nature" the law of the case. *Buchanan* v. *Evans, ante,* at 1363 (BRENNAN, J., in chambers).

The case later came to this Court on a petition for certiorari from a judgment of the Court of Appeals for the Third Circuit that had concluded that some consolidation of school districts would be necessary in order to formulate an appropriate decree. Certiorari was denied by this Court, *Delaware Board of Education* v. *Evans,* 434 U. S. 880 (1977), with three Justices voting to grant certiorari, and vacate and remand the case for reconsideration in light of this Court's opinion in *Dayton Board of Education* v. *Brinkman,* 433 U. S. 406 (1977). Were I alone deciding these issues on the merits, I would probably grant a stay pending the timely filing of a petition for certiorari. Cf. *New York Times Co.* v. *Jascalevich, ante,* at 1337 (MARSHALL, J., in chambers). But as MR. JUSTICE MARSHALL went on to point out in his in-chambers opinion, the Circuit Justice must be reasonably satisfied that four Justices would vote to grant certiorari in the case, and while I do not view any of the prior actions of this Court as dispositive of the merits of the issues decided by the District Court or the Court of Appeals for the Third Circuit, neither do I feel that I can in good con-

science say that four Justices of this Court would vote to grant certiorari to consider them at this time.

Present in the instant application, however, is an elaborate, specific plan devised by the District Court to remedy the violations which it had previously found. That remedy consists in part of a court-ordered reorganization and consolidation of 11 independent school districts in northern New Castle County. What had been 11 independent governing boards is for the present 1 interim board having supervisory authority over all 11 districts. The order requires the Delaware State Board of Education to appoint the five-person governing board. Included within the interim board's authority is the assignment of students, the levying of necessary taxes, the hiring of faculty, and the choice of curriculum.

The second aspect of the remedy is a system of pupil assignment which the District Court ordered the Board to adopt in the judgment which the Court of Appeals affirmed in the case now before me. The *modus operandi* of that plan is that all students from the two predominantly black school districts are to be reassigned to the nine predominantly white districts for nine years of their elementary and secondary education, and all students in the predominantly white districts are to be reassigned to the predominantly black districts for three consecutive years. In affirming this judgment of the District Court, the Court of Appeals for the Third Circuit relied in part on this quotation from *Swann* v. *Charlotte-Mecklenburg Board of Education,* 402 U. S. 1, 15–16 (1971):

"[A] school desegregation case does not differ fundamentally from other cases involving the framing of equitable remedies to repair the denial of a constitutional right."

However, the language in *Swann* immediately following the language quoted by the Court of Appeals for the Third Circuit states:

"The task is to correct, by a balancing of the individual

and collective interests, the condition that offends the Constitution.

"In seeking to define even in broad and general terms how far this remedial power extends it is important to remember that judicial powers may be exercised only on the basis of a constitutional violation. Remedial judicial authority does not put judges automatically in the shoes of school authorities whose powers are plenary. Judicial authority enters only when local authority defaults." *Id.*, at 16.

In the succeeding cases of *Milliken* v. *Bradley,* 418 U. S. 717 (1974), *Hills* v. *Gautreaux,* 425 U. S. 284 (1976), and *Dayton Board of Education* v. *Brinkman, supra,* this Court has with increasing emphasis insisted that the scope of the District Court's authority to fashion a remedy is limited by the constitutional wrong that is to be righted. I believe that before a remedy of this drastic a nature is finally imposed, not merely on 1 school board but on 11 previously independent school boards, four Justices of this Court would wish to grant certiorari and consider that question on its merits. No case from this Court has ever sanctioned a remedy of this kind, or any remedy remotely like it. The only case in which a District Court has become this deeply involved in the day-to-day management of school affairs is *Morgan* v. *Kerrigan,* 530 F. 2d 401 (CA1 1976), in which this Court denied certiorari, 426 U. S. 935 (1976). In that case, however, the District Court was dealing with a single school district, and it does not appear that the community superintendents appointed to oversee particular schools by the District Court's order had any authority to levy taxes. If the Court meant what it said in *Dayton,* that "local autonomy of school districts is a vital national tradition," 433 U. S., at 410, I think it would give plenary consideration to a case where the District Court has treated a series of independent school districts which were found to have

committed constitutional violations much as if they were a railroad in reorganization.

This case, however, is not presently at the certiorari stage, and no petition for certiorari has been filed. The applicants seek only a partial stay of the District Court's order, conceding that the pressures of time would render inappropriate a complete stay in view of the fact that the schools in question are scheduled to open Monday, September 11.

This case was argued to the Court of Appeals for the Third Circuit on May 10, 1978, and that court handed down its opinion on July 24. No application for stay of the mandate of the Court of Appeals was presented to MR. JUSTICE BRENNAN until August 18. He denied the application on September 1, and it was presented to me late in the day on Tuesday, September 5. In a case of this magnitude, with a school opening date of September 11 rapidly approaching, it could be said that applicants might have acted more quickly than they did in seeking a stay from MR. JUSTICE BRENNAN. But be that as it may, equitable considerations involving stays do not necessarily turn on notions of laches. I conclude that in view of all the considerations which must be weighed in a matter such as this, the application for stay should be denied. The consolidated school system has been subject to the desegregation order, without interruption, since January 1978. It would simply be too disruptive to upset established expectations now. "This disposition, of course, does not reflect any view on the merits of the issues presented." *Dayton Board of Education* v. *Brinkman, ante,* at 1357 (STEWART, J., in chambers).