Robert Anthony REED et al., Plaintiffs,

v.

James A. RHODES et al., Defendants.

No. C73–1300.

United States District Court,
N. D. Ohio, E. D.

May 14, 1979.

James L. Hardiman, Theresa Demchak, Cleveland, Ohio, Nathaniel R. Jones, New York City, Thomas I. Atkins, Roxbury, Mass., for plaintiffs.

Jeremiah Glassman, Michael Sussman, Dept. of Justice, Washington, D.C., for amicus curiae, United States of America.

Mark O'Neill, Weston, Hurd, Fallon, Paisley & Howley, George I. Meisel, James P. Murphy, Squire, Sanders & Dempsey, John H. Bustamante, Cleveland, Ohio, for defendants.

## ORDER

BATTISTI, Chief Judge.

The local defendants moved the Court of Appeals for an order staying the implementation of the remedy mandated by the February 6, 1978 and October 16, 1978 orders. The January 8, 1979 order grants the local defendants' motion as follows:

> Upon consideration of the fact that the Supreme Court of the United States has granted certiorari in *Gary L. Penick v. Columbus Board of Education*, 583 F.2d 787, (6th Cir. 1978), *cert. granted*, 439 U.S. 1066, 99 S.Ct. 831, 59 L.Ed.2d 31 (1979), and *Brinkman v. Gilligan*, 583 F.2d 243 (6th Cir. 1978), *cert. granted*, 439 U.S. 1066, 99 S.Ct. 831, 59 L.Ed.2d 31 (1979); and

> Believing that answers to the questions in these two cases will control or materially affect the outcome of the appeal in the instant case,

> Now, therefore, the motion for stay is granted pending further order of this court.

The stay order has created an important issue of interpretation because the local defendants did not move for a complete stay of particular orders of this Court but asked for the more limited stay of "the *implementation* of the *remedy* mandated by the District Court Orders of February 6, 1978 and October 16, 1978." The style of the local defendants' motion in conjunction with the brief decision by the Court of Appeals requires this Court to ascertain the meaning

of the stay in the context of the evolution of this lawsuit.[1]

■ A stay is an extraordinary form of reprieve and is only granted upon a showing that an appeal, with some likelihood of success, is pending, that the appellant would suffer irreparable harm unless a stay were granted and that the equitable harm to other parties and the public interest from delay is not substantial. *Virginia Petroleum Jobbers Assn. v. F.P.C.*, 104 U.S.App. D.C. 106, 259 F.2d 921 (1958). A stay does not reverse, annul, undo, or suspend what has already been done or what is not specifically stayed. Nor does a stay impair the force, or pass on the merits of the orders of the trial court. A stay merely suspends the time required for the performance of the particular mandates stayed. The sole purpose of a stay is to preserve the status quo pending an appeal so that the appellant may reap the benefit of a potentially meritorious appeal.

■ This district court's orders retain their vitality and remain the law of the case until reversed, vacated or remanded. The court retains jurisdiction over the parties and the subject matter and may utilize its contempt powers to preserve its jurisdiction and the integrity of the letter and spirit of its orders. *U. S. v. U.M.W.*, 330 U.S. 258, 293, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Coppedge v. Franklin County Board of Education*, 293 F.Supp. 356, 364 (E.D.N.C.1968). The district court also has full authority to interpret the scope and meaning of a stay by a Court of Appeals, just as it would have power to interpret any other appellate order.

■ Stay orders in school desegregation cases are generally disfavored. *Alexander v. Holmes*, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19 (1969); *Carter v. West Feliciana Parish School Board*, 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477 (1970); *Reed v. Rhodes*, 549 F.2d 1050 (6th Cir. 1976). *Kelley v. Metropolitan County Board of Education of Nashville & Davidson County*, 436 F.2d 856 (6th Cir. 1970).[2] The foremost reason for the stringent allowance and interpretation of stays is the incalculable and unrecoverable harm to black school children from each unnecessary semester of delay pending the implementation of a remedy. *Kelley v. Metropolitan County Board of Education of Nashville & Davidson County, supra* at 862. The federal courts must carefully abide by the "meaningful and immediate progress" mandate contained in *Green v. County School Board of New Kent County*, 391 U.S. 430, 439, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968) and must desegregate the school system "at the earliest practical date." *Id.* A stay must not create any unnecessary delay in the effectuation of a comprehensive remedy.

Stays are also generally denied because they are a potent weapon for delay and confusion. Potentially, a defendant could attack the remedy in a piecemeal fashion and delay the ultimate implementation for decades.[3] In this proceeding alone, at least nine stays have been sought from the district court and at least five from the Court of Appeals. The continuous interposition of stays in this proceeding has wreaked havoc

---

**1.** The January 8, 1979 stay order contains three case numbers in its caption. The numbers represent separately docketed appeals in the Sixth Circuit Court of Appeals. Case Numbers 78–3405 and 78–3406 are companion appeals by the state defendants from the orders of June 19, 1978 and June 26, 1978 (No. 3405) and July 6, 1978 (No. 3406). This Court's April 27, 1979 order vacating the July 6, 1978 order was in response to the stay in Case No. 78–3406 Case Number 78–3156 represents the local defendants' appeal of the February 6, and October 16, 1978 orders. This interpretive order relates exclusively to the stay order's impact on the defendants' obligations under these and related orders.

**2.** Stays also have been denied in the following desegregation cases; *Booker v. Special School District.* (Minneapolis); *Crawford v. Los Angeles Board of Education*, (J. Rehnquist); *Evans v. Buchanan*, (Wilmington, J. Rehnquist); *Dayton Board of Education v. Brinkman*, (J. Brennan).

**3.** The desegregation case of the Wilmington, Delaware school system has been in the federal courts for over 22 years. *Evans v. Buchanan*, 379 F.Supp. 1218, 1220 (Del.1974).

on the community's expectations and may create considerable confusion in the effectuation of the ultimate remedy. *See generally Alexis I. DuPont School District v. Evans,* 439 U.S. 1375, p. 1378, 99 S.Ct. 32, p. 34, 58 L.Ed.2d 83 (J. Rehnquist, 1978).

Stays in desegregation cases are also denied because, unlike judgments awarding monetary damages or simple equitable relief, the remedial phase of a school desegregation case is dynamic and complex. The remedy attempts to rectify protracted and entrenched problems demanding comprehensive solutions. Court mandates generally consist of numerous orders detailing a host of duties and responsibilities. A stay of one facet of the remedy has the potential of impairing the effectiveness of the remaining components. Therefore, stays of interim planning and preparation orders are rarely granted.

In light of the general principles outlined above, the Sixth Circuit stay should be strictly but fairly construed.

The stay order distinguishes initially between "implementation" activities and those which are more appropriately considered "planning and preparation." The defendants only requested a stay of "implementation" and not of the "planning and preparation" components of the February 6, 1978 and October 16, 1978 orders. During oral argument, counsel for the local defendants reaffirmed that "[w]e have no objection at all to the fact that planning should be continued." February 16, 1979 hearing, p. 6. Counsel's statement is corroborated, at least in part, by Dr. Margaret Fleming's representation that the local board is continuing to prepare and plan for full implementation in September, 1979 and has hired additional personnel to aid in that task. Deposition of Margaret Fleming, February 13, 1979, p. 81.

This distinction between "planning" and "implementation" has been articulated in many other stay opinions in school desegregation cases. In at least two opinions, the courts have stayed "implementation" but have required that planning activities be continued. In *In re Bradley,* 456 F.2d 6 (4th Cir. 1972), the Fourth Circuit Court of Appeals expressly relied on the distinction and specifically stayed the "implementation" of the district court remedial decree and ordered that all planning continue

> to the end that there will be no unnecessary delay in the implementation of the ultimate steps contemplated in the order of the District Court, in the event that the order is affirmed on appeal. *Id.* at 7.

In *Evans v. Buchanan,* 435 F.Supp. 832 (D.Del.1977), the district court stayed "implementation" pending the disposition of a writ of certiorari by the United States Supreme Court. However, the court specifically mandated that expeditions planning be given the "highest priority." *Id.* at 848.

This distinction has also been drawn in many cases where actual implementation is so far off in the future that the courts were, in essence, being asked to stay the planning and preparation efforts.[4] In each case, the stay was denied or vacated because of the court's refusal to inject harmful delay into the planning process. *E. g., Armstrong v. O'Connell* 416 F.Supp. 1325 (E.D.Wis.1976) (denying stay, court cites *In re Bradley, supra,* for proposition that planning should continue). The Sixth Circuit has consistently maintained that,

> "[I]n school desegregation cases, where the value of the constitutional rights to be protected far outweighs administrative costs that might be incurred in formulating a remedy, the lower court proceedings such as those contemplated here should continue." *Reed v. Rhodes,* 549 F.2d 1050, 1052 (6th Cir. 1976) (motion for revocation of one judge stay order granted).

*Kelley v. Metropolitan County Board of Education of Nashville and Davidson County, supra* (motion for vacation of district court stay granted).

---

4. Counsel for local defendants orally represented to this Court that their argument and affidavit filed in the Court of Appeals which contained numerous references to the costs of de-

segregation were introduced for the sole purpose of asserting that implementation was imminent and that the requested stay was, therefore, timely.

The local defendants' motion to the Sixth Circuit Court of Appeals attempts to parallel the relief requested of Justice Rehnquist in *Columbus Board of Education v. Penick*, 439 U.S. 1348, 99 S.Ct. 24, 58 L.Ed.2d 55 (application of stay to single justice, August 11, 1978). The application and affidavit filed in this case, however, differs in one significant and determinative respect. In the *Penick* case, the local board sought a stay of the *whole* remedial plan and *all* liability findings. Justice Rehnquist was very careful to point out that he was given no basis "to tailor a stay to allow the applicants a more limited form of relief." *Id.* at p. 1351, 99 S.Ct. at p. 26. Although Justice Rehnquist may have desired to limit the scope of his stay, the parties had taken an "all or nothing" approach and he had "no recourse but to grant or deny the stay of the mandate and judgment in its *entirety.*" *Id.* (emphasis added). The complete stay in *Penick*, therefore, is clearly distinguishable from the stay in this case which refers specifically to the local defendants' limited request for a stay of "implementation."

■ The stay order is susceptible of only one reasonable interpretation. Its purpose and effect was not meant to inject delay into the district court proceedings. The stay made no attempt to overrule the weight of authority which provides that stays of planning are unusual and have only been granted after thorough and explicit analysis. Rather, the motion for a stay of implementation was simply granted. The order provides no basis for an interpretation which broadens the narrow parameters of the motion. Therefore, all planning and preparation activities are not stayed and must be performed in accordance with this and prior orders.

The difficulty of the Sixth Circuit stay order arises not with respect to its intent but with respect to its practical consequences. During oral argument the following four distinct interpretative problems arose:

1. Are the various planning functions elaborated and mandated in the February 6, 1978 and October 16, 1978 Orders stayed? Is the "development" of a student disciplinary code a "planning" or "implementation" function?

2. Does the stay order have a penumbral effect on district court orders other than those specifically contained in the local defendants' motion?

3. Does the stay order preclude the district court from acting affirmatively and ordering "implementation" activities when the status quo has been voluntarily altered by the local defendants?

4. Does the stay vitiate the defendants' obligation to make substantial and, perhaps, nonrecoverable expenditures in preparation for full implementation? More specifically, must the defendants purchase the remaining complement of 350 buses to prepare for full implementation?

**A. The Distinction Between "Planning" and "Implementation" Functions**

■ In oral argument on February 16, 1979, counsel for local defendants contended that they had no duty to prepare a student disciplinary code because their duty had initially arisen pursuant to the terms of the February 6, 1978 order which has been stayed. February 6, 1979 hearing, pp. 61, 83–85. Nevertheless, the local defendants also argued, and this opinion so concludes, that "planning" functions, even if mandated in the February 6, 1978 or October 16, 1978 orders, are not stayed. The only way to reconcile these two positions, is to posit that the "development" of a student disciplinary code constitutes "implementation." For the reasons articulated below, the development of the code is clearly a "planning" function which has not been stayed.

■ Courts have carefully drawn the distinction between "planning" and "implementation" to insure that there would be no unnecessary delay from the time that all meaningful appeals are exhausted to the point where the plaintiffs would obtain the benefit of the remedy sought. In so doing an implicit or explicit balancing has been made. The courts have found that the harm of any delay of the "implementation"

is greater than the burden of expending time and money on preparation of a remedy that may be modified or vacated on appeal. Therefore, the cost or administrative difficulty of a required activity provides no basis to categorize it as "planning" or "implementation."

The court's duty to minimize delay provides the only meaningful and significant criterion to categorize an activity as "planning" or "implementation".[5] Implementation activities are those ultimate steps which immediately carry out or accomplish the overall remedy. Examples include the actual transportation of children, the actual closing of schools, and the actual alteration of grade levels. Planning tasks or activities are those which can not be completely, competently and successfully accomplished immediately following the vacation of a stay. Moreover, any activity which is a predicate for, or a preliminary step to, the accomplishment of some other activity is a planning activity if both the predicate or preliminary activity and the dependent activity could not be completely, competently and successfully accomplished immediately following vacation of a stay.

The categorization described above has implicitly been applied in the distinctions drawn in the case law. In *In re Bradley*, 456 F.2d 6 (4th Cir. 1972), though implementation was stayed, the court required the formulation of plans to merge school districts, the formation of a provisional school board for the merged school district, the utilization of administrators and staff to develop and assemble data and tentative education plans, and the employment of outside administrators and assistants to accomplish the planning tasks. In each instance, the activities deemed planning and preparation could not be carefully consummated without a time lag following the resolution of the appeal.

In *Evans v. Buchanan, supra,* although implementation was stayed, the court required the defendants to develop the remedial plan, to hire experts and other personnel needed to develop the plan, and to continue filing progress reports to the court. The only actions stayed under the guise of "implementation" were the effectuation of a final plan for certain grade level changes, the actual transfer of authority to a merged school district and the legal abolition of the eleven school districts. Each of the activities in this latter category could be accomplished in a day.

Applying this standard to the February 6, 1978 order, only the following activities were stayed by the Sixth Circuit stay of January 8, 1979:

a. Reassigning children to the schools designated in the plan;

b. Altering the grade level structures in the Cleveland schools;

c. Teaching an affirmative reading skills program (455 F.Supp. 599);

d. Putting into effect a non-discriminatory counselling and career guidance program, and;

e. Disseminating the Code of Student Rights, Responsibilities, and Discipline (*Id.* at 602)[6]

Applying the standard to the October 16, 1978 order, only the following activities were stayed by the Sixth Circuit stay of January 8, 1979:

a. Teaching an affirmative reading skills program pursuant to section II, 3.

b. Putting into effect the counselling and career guidance program described in section II, 4.

c. Implementing the plan of cooperative education in section II, 5.

d. Implementing the extracurricular activities plan in section II, 6.

e. Disseminating the student disciplinary code in section II, 8.

---

5. The mass purchase of buses is one activity which cannot properly be considered either an exclusively planning or implementation function. Therefore, it is excluded from this particular analysis. See Section D., infra.

6. As will be discussed below, the stay of this activity was partially waived when the local defendants carried out its "voluntary desegregation" plan in February, 1979.

All other activities, tasks, duties and responsibilities described in those orders are planning or preparation tasks and must be undertaken notwithstanding the Sixth Circuit stay order. This Court shall have continuing jurisdiction to monitor the local defendants' progress in carrying out these activities and from time to time may supplement its order to assure full and complete planning and preparation.

### B. The Stay Has a Very Limited Penumbral Effect

■ At the February 16, 1979 hearing, counsel for the local defendants argued that the stay order implicated not only the February 6 and October 16 orders but also "all actions required after February 6, [1978]." February 16, 1978 hearing transcript, p. 4. This statement is grossly overinclusive.

The February 6, 1978 order is the blueprint or plan for the ultimate remedy in this lawsuit. It sets forth the goals, directions and guidelines for the creation of a unitary school system in the City of Cleveland. While the order attempted to be comprehensive, it is by no means complete. There are many necessary aspects of successful desegregation that were only referred to or were not even mentioned. Nevertheless, the order provides the background and the standard of evaluation for any further embellishments of the remedial decree.[7]

To submit that all actions required after February 6 are stayed is to engage in a distortion of the meaning and clear intent of the Sixth Circuit stay order. For the reasons described above, orders in school desegregation cases are to be narrowly construed so as to limit the potential harm to plaintiffs that could be caused by an overly broad application. The stay order only precludes the "implementation" of the remedy

described in two specific orders. It does not preclude subsequent orders compelling supplemental planning and preparation activities. Beyond the particular actions described above which are stayed, the stay order has no controlling influence over the proceedings in the district court. Therefore, the defendants have a continuing duty to comply in a timely fashion with all orders of this court except for those specifically set forth above.

### C. The District Court May Order Implementation Activities Where the Local Defendants Have Voluntarily Disturbed the Status Quo Under the Stay Orders

The purpose of the stay is to preserve the status quo for the parties pending the resolution of an appeal. The status quo in desegregation cases is determined, at least in part, by the existing conditions of the school system and by the community's expectations at the time the stay is granted. *See Bustop v. Board of Education of City of Los Angeles*, (J. Rehnquist, September 8, 1978) (on application for stay); *Alexis duPont School District v. Evans*, (J. Rehnquist, September 8, 1978) (on Reapplication for stay). The status quo is preserved by avoiding the disruption of the school system and the community expectations. *See Dayton Board of Education v. Brinkman*, (J. Stewart, August 28, 1978) (on application for stay).

■ The local defendants sought the January 8, 1979 stay of this Court's orders. They specifically requested that implementation of a desegregation remedy consisting of student reassignments be delayed for reasons of finance and of administrative confusion. Yet, despite the fact that the stay of implementation was granted and the time frame postponed, they voluntarily

---

**7.** The February 6 order and subsequent statements by the Court have explicitly requested creative, positive embellishments and modifications of the plan. See, e. g., mandate to develop a comprehensive magnet school plan, 455 F.Supp. 600. The plan needs refinement to provide a complete and closely woven remedy which takes into account school closings, grade

restructuring, and magnet school programs. Many of these programs were nascent ideas at the time the February 6, 1978 plan was drafted; therefore, the February 6, 1978 plan would need to be modified to include the developments resulting from intelligent preparation for implementation.

disrupted the operation of the school system and the community expectations with their various plans to desegregate Cleveland through school closings and ill-thought magnet schools.

The result was chaos and the voluntary disruption of the very thing they had sought from the Court of Appeals—a temporary reprieve from the dislocations attendant to desegregation.

The local defendants' actions[8] vitiated the stay with respect to those schools affected by their voluntary implementation of desegregation. Their actions contradicted the import of their statements to the Court of Appeals. Their actions indicated they were not concerned with maintaining the status quo pending the outcome of the appeals in this case.

Once the defendants voluntarily ignore the grounds for the stay, this Court must analyze their activities to insure that they do not "thwart, frustrate, or otherwise place an obstacle in the way of future desegregation efforts." *Armstrong v. O'Connell*, 416 F.Supp. 1325, 1331 (E.D.Wis.1976); *see Bradley v. School Board of City of Richmond*, 324 F.Supp. 456, 467 (E.D.Va.1971). The February 6, 1978 plan was drafted after the defendants attempted three times to create a workable plan for reasonable desegregation in Cleveland. While their third plan was more sincere and thoughtful than

the first, it, too, required revisions by desegregation experts hired by the the Court. The result of these considerable efforts by the parties, the government and the court is a sophisticated plan which sets forth the most comprehensive and effective plan for this City. This Court has a duty to ensure that the most reasonable and effective remedy be applied to rectify the constitutional injury.[9] The February 6, 1978 plan accomplishes this purpose. Because the February 6 plan is a tightly integrated set of guidelines, any actions undertaken which change or interfere with any component of the plan could dramatically impair the effectiveness of the plan as a whole.[10] As a result, any actions by the defendants which may affect the February 6 plan must be analyzed and approved by this Court to insure that it fits the overall guidelines for future desegregation. *See Griffin v. County School Board of Prince Edward County*, 363 F.2d 206 (4th Cir. 1966). Any affirmative actions by the defendants must be in furtherance of the February 6 plan or must be an approved modification of it.

The local defendants will not be allowed to circumscribe this Court's authority to enforce its remedial and injunctive orders by their tactics.[11] The stay clearly provided the defendants with the option of delaying implementation until the stay was lifted. Instead, they opted to disrupt the status quo. The stay order did not immunize their

---

**8.** Their plans were so unintelligent, unrealistic and harmful that (a) they had to scrap one major plan to provide magnet middle schools for 2,000 children, (b) they decided to change, at the last minute, a full-time business magnet program into a part-time program, and (c) a form of "intact" busing was created when they reassigned black children from a closed black junior high school. See April 2, 1979 Order (requesting the Justice Department to investigate possible criminal contempt actions).

**9.** *Green v. County School Board of New Kent County, supra.*

**10.** Piecemeal planning for desegregation is unacceptable because it can only lead to delay, disproportionate burdens, and terrible confusion in the community. The local defendants' attempts to close 19 schools in Fall, 1978 (a plan which was voluntarily scrapped on Sep-

tember 28, 1978) and to establish magnet middle schools in February (also voluntarily withdrawn) has created great harm and confusion in the community and may impair successful desegregation in the future. See Fleming Deposition, February 13, 1979, p. 110.

**11.** The August 31, 1976 Order which permanently enjoined defendants "from creating, promoting, or maintaining racial segregation in any school or other facility in the Cleveland School System," *Reed v. Rhodes*, 422 F.Supp. 708, 797 (N.D.Ohio, 1976), has not been affected or impaired by the Sixth Circuit stay order. The Court may enforce the injunction through civil or criminal contempt sanctions. *See, e. g., Lamb v. Cramer*, 285 U.S. 217, 219, 52 S.Ct. 315, 76 L.Ed. 715 (1932).

desegregation activities from the scrutiny and review of this Court. Once they engaged in desegregation implementation, they had a duty to comply with or seek modification of the letter and spirit of this Court's orders.[12]

The recent history of the student disciplinary code is an illustration of the local defendants' most absurd attempt to use the stay order to undermine this Court's legitimate authority. On the one hand, they vociferously argued that the stay precluded this Court from requiring them to draft, adopt and disseminate a disciplinary code. On the other hand, despite the Court of Appeals' stay, the local defendants voluntarily operated a magnet elementary school with a racially balanced population and with a heavy emphasis on discipline. January 24, 1979 submission. To open a desegregated school which emphasizes discipline without a codified disciplinary code flies in the face of the findings in the February 6, 1978 and January 8, 1979 orders that clearly show the danger of discriminatory and arbitrary discipline in a desegregated setting. The defendants can not seek cover under the stay order if they disrupt the status quo they had sought. Their voluntary desegregation efforts waived their right to object that the stay order precluded this Court from ordering them to disseminate the disciplinary code.[13]

This Court will continue to require the implementation of orders if the defendants change the status quo or if their actions may impair the effectiveness of future smooth desegregation. *See U. S. v. United Mine Workers*, 330 U.S. 258, 293, 67 S.Ct. 677, 91 L.Ed. 884 (1947) (orders must be obeyed until reversed). Moreover, if the defendants do act voluntarily, their actions must be reviewed by the Court and they must comply with the February 6, 1978 plan, unless a modification is successfully sought.

### D. The Stay Precludes an Order Requiring the Defendants to Order Buses

■ The January 8, 1979 stay order which refers to Case No. 78–3406 directly stayed this Court's June 19, 1978 and June 26, 1978 orders, which require

"all defendants in this case [to] take whatever steps are necessary to obtain delivery of a sufficient number of vehicles . . . to implement desegregation . . . pursuant to the remedial plan contained in this Court's order of February 6, 1978, as modified by order of June 16, 1978 . . . ." June 19, 1978 order.[14]

Notwithstanding the distinction drawn in the stay of the February 6 and October 16, 1978 orders, this specific stay precludes the mandatory purchase of buses. The Court of Appeals' desire to stay the purchase of vehicles also is evidenced by its stay of the July 6, 1978 escrow order.

The January 8, 1979 stay order must be construed consistent with the case law. Therefore, the stay of the purchase of a fleet of buses and the stay of implementation in no way precludes the mandatory expenditure of money by the defendants in other planning and preparation activities. For example, as in *In re Bradley, supra* and *Evans v. Buchanan, supra*, the defendants remained charged with the obligation to continue the formulation of comprehensive and viable plans and the hiring of experts and other personnel needed to fulfill their preparation tasks. The stay order, therefore, does not impair this Court's authority to require that all appropriate planning and preparation activities, regardless of cost, be

---

**12.** This statement is not intended to discourage creative modifications of orders. Rather, they are encouraged if they are sought in the proper manner.

**13.** The local defendants were ordered to distribute the revised Code with amendments to every student attending any of the schools affected by the February, 1979 reassignment plans. February 23, 1979 Order.

**14.** See note 1, supra.

completed as described in section A–C, above.

IT IS SO ORDERED.