[This opinion has been published in *Ohio Official Reports* at 85 Ohio St.3d 413.]

LAIDLAW WASTE SYSTEMS, INC., PETITIONER, *v.* CONSOLIDATED RAIL
CORPORATION, RESPONDENT.

[Cite as *Laidlaw Waste Sys., Inc. v. Consol. Rail Corp.*, 1999-Ohio-403.]

*Workers' compensation—Subrogation—Effective date of former R.C. 4123.93 is
October 20, 1993.*

The effective date of former R.C. 4123.93, as enacted by Am.Sub.H.B. No. 107, is
October 20, 1993.

(No. 98-1274—Submitted March 10, 1999—Decided May 12, 1999.)

ON ORDER from the United States District Court for the Southern District of Ohio,
Eastern Division, Certifying a Question of State Law, No. C2-98-0227.

———————————

{¶ 1} This matter is before us as a certified question of state law from the
United States District Court, Southern District, Eastern Division. In its certification
order the federal district court states:

"Plaintiff Laidlaw Waste Systems, Inc. ('Laidlaw') has asserted a
subrogation claim against defendant Consolidated Rail Corporation ('Conrail')
under the provisions of Ohio Revised Code § 4123.93, which grants a right of
subrogation to a self-insuring employer for the amount of compensation and
benefits paid to or on behalf of his employee for an injury or occupational disease
that is compensable under the Ohio's Workers' Compensation Act against a third-
party tortfeasor if the employee is a party to an action involving the third-party
tortfeasor. Laidlaw alleges that, as a self-insuring employer, it paid benefits to or
on behalf of its employees Bernard Garrett and David Gollihue, who were injured
in the scope and course of their employment on May 6, 1994 when a Laidlaw truck
operated by Gollihue, in which Garrett was a passenger, was involved in a collision
with a Conrail train. Garrett died as a result of his injuries. Gollihue and Garrett's

estate successfully prosecuted actions against Conrail in the Common Pleas Court of Union County, Ohio.

"Conrail has moved to dismiss Laidlaw's subrogation claim on the ground that Section 4123.93 was not in effect at the time of the accident. Conrail argues that the effective date of the statute specified by the Ohio General Assembly, to wit: October 20, 1993, was effectively changed to July 7, 1994 as a result of the decision of the Supreme Court of Ohio in the case of *State ex rel. Ohio AFL-CIO v. Voinovich*, 69 Ohio St.3d 225, 631 N.E.2d 582 (1994), as further explained in the case of *State ex rel. Ohio AFL-CIO v. Voinovich*, 69 Ohio St.3d 1208, 632 N.E.2d 907 (1994)."

_____

*Habash, Reasoner & Fraiser*, Stephen J. Habash and *Kirk M. Wall,* for petitioner.

*Vogelgesang, Howes, Lindamood & Brunn*, *Phillip E. Howes* and *Thomas R. Himmelspach,* for respondent.

*Betty D. Montgomery*, Attorney General, *Jeffery S. Sutton* and *Nora E. Jones*, Assistant Attorneys General, in support of petitioner, for *amicus curiae* Bureau of Workers' Compensation.

_____

**LUNDBERG STRATTON, J.**

{¶ 2} Pursuant to S.Ct.Prac.R. XVIII, the federal district court has certified the following question of law to this court for our determination:

"What is the effective date of Ohio Revised Code § 4123.93, as enacted by Am.Sub.H.B. No. 107, following the April 8, 1994 order issued in *State ex rel. Ohio AFL-CIO v. Voinovich*, 69 Ohio St.3d 225 [631 N.E.2d 582] (1994), and the April 29, 1994 order issued in *State ex rel. Ohio AFL-CIO v. Voinovich*, 69 Ohio St.3d 1208 [632 N.E.2d 907] (1994)?"

**{¶ 3}** We find that the effective date of former R.C. 4123.93 is October 20, 1993, as enacted by Am.Sub.H.B. No. 107.[1]

**{¶ 4}** The Ohio Constitution mandates that "[n]o law passed by the general assembly shall go into effect until ninety days after it shall have been filed by the governor in the office of the secretary of state, except as herein provided." Section 1c, Article II of the Ohio Constitution. The purpose of a delayed effective date is to provide Ohio citizens an opportunity to accept or reject the law by referendum. Section 1, Article II of the Ohio Constitution. But laws that appropriate money for current state government expenses, tax levies, or emergency laws go into effect immediately and are not subject to referendum. Section 1d, Article II of the Ohio Constitution.

**{¶ 5}** Am.Sub.H.B. No. 107 contained provisions that appropriated money for expenses of the Bureau of Workers' Compensation. It also contained provisions that amended substantive sections of the Ohio Revised Code pertaining to workers' compensation, including R.C. 4123.93. 145 Ohio Laws, Part II, 3187. Specifically, Am.Sub.H.B. No. 107 enacted R.C. 4123.93 to provide that the Administrator of the Bureau of Workers' Compensation and eligible employers are subrogated to the rights of injured employees against a third-party tortfeasor. 145 Ohio Laws, Part II, 3187-3188. Am.Sub.H.B. No. 107 was signed into law July 21, 1993. 145 Ohio Laws, Part II, 3213-3214. This was the effective date for the *appropriation* provisions of Am.Sub.H.B. No. 107. But the effective date of the *non-appropriation* provisions of Am.Sub.H.B. No. 107, including the subrogation amendment to R.C. 4123.93, was stayed for ninety days, until October 20, 1993, in order to comply with Section 1c, Article II of the Ohio Constitution. 145 Ohio Laws, Part II, 3204.

---

1. R.C. 4123.93 was repealed and reenacted effective September 29, 1995. 146 Ohio Laws, Part II, 3595-3597.

**{¶ 6}** On October 15, 1993, the Ohio AFL-CIO filed an action in mandamus, prohibition, and quo warranto in this court challenging the constitutionality of Am.Sub.H.B. No. 107, alleging *inter alia* that Am.Sub.H.B. No. 107 deprived the citizens of Ohio of their right to referendum. *State ex rel. Ohio AFL-CIO v. Voinovich* (1994), 69 Ohio St.3d 225, 631 N.E.2d 582 ("*Voinovich I*"). Although the language in Am.Sub.H.B. No. 107 delayed the effective date of the non-appropriation provisions for ninety days, the court in *Voinovich I* agreed with relator, finding that the decision in *State ex rel. Riffe v. Brown* (1977), 51 Ohio St.2d 149, 5 O.O.3d 125, 365 N.E.2d 876, effectively deprived the citizens of Ohio of a meaningful opportunity for referendum.

**{¶ 7}** In *Riffe*, the court addressed the effective date of laws with regard to the right of referendum. In *Riffe,* the law in question included one provision that appropriated money for government spending and four provisions that dealt with non-appropriation issues. The Secretary of State had determined that the single appropriation provision went into effect immediately, while the effective date of the non-appropriation provisions was stayed ninety days to allow consideration of a referendum as is required by the Ohio Constitution. Relators sought a writ of mandamus to compel the Secretary of State to direct all county boards of elections to give *immediate effect* to the *entire law*. The court granted the writ. The *Riffe* court found that the existence of a single appropriation provision within a law mandates that the entire law go into effect immediately, notwithstanding that there are non-appropriation provisions within the law. *Id*. at 154, 5 O.O.3d at 128, 365 N.E.2d at 879.

**{¶ 8}** The court in *Voinovich I* found that the decision in *Riffe* " 'emasculate[s] the constitutional right of electors of Ohio to a referendum.' " *Voinovich I*, 69 Ohio St.3d at 236, 631 N.E.2d at 591, quoting *Riffe*, 51 Ohio St.2d at 162, 5 O.O.3d at 132, 365 N.E.2d at 883 (O'Neill, C.J., dissenting). Therefore,

the court in *Voinovich I*, adopting the language in Chief Justice O'Neill's dissent in *Riffe*, held:

" 'The language of Section 1c [Article II] providing that "such law, section of such law or any item in such law appropriating money be submitted to the electors of the state for their approval or rejection * * * " establishes unequivocally that an Act *need not necessarily have a single effective date*.' (Emphasis added.)" *Id.*, quoting *Riffe* at 163, 5 O.O.3d at 133, 365 N.E.2d at 884.

**{¶ 9}** In other words, any provision within a law that appropriates money for government expenses will go into effect immediately because it is not subject to a referendum, while any provision that does not appropriate money for government spending will have its effective date delayed for ninety days to allow Ohio's citizens to consider a referendum. Accordingly, the court in *Voinovich I* overruled *Riffe*.

**{¶ 10}** Because *Riffe* had "foreclosed any meaningful opportunity for the citizens of this state to circulate a petition for referendum on Am.Sub.H.B. No. 107," 69 Ohio St.3d at 236, 631 N.E.2d at 591, the court in *Voinovich I* stayed the effective date of the non-appropriation provisions of Am.Sub.H.B. No. 107 for an additional ninety days. The stay was issued the date of the decision, April 8, 1994, and expired July 7, 1994.

**{¶ 11}** Subsequently, this court clarified the effect of this stay in *State ex rel. Ohio AFL-CIO v. Voinovich* (1994), 69 Ohio St.3d 1208, 632 N.E.2d 907 ("*Voinovich II*"). In *Voinovich II*, the court stated:

"[T]he effect of the stay granted in the court's decision of April 8, 1994, 69 Ohio St.3d 225, 631 N.E.2d 582 [*Voinovich I*], is to require the Ohio Bureau of Workers' Compensation and the Industrial Commission of Ohio to *continue operations under the status quo as it existed on April 8, 1994, staying only the programs authorized, but not yet implemented, under Am.Sub.H.B. No. 107*." (Emphasis added.)

**{¶ 12}** The effect of this stay was not to "turn back the clock" and operate as if Am.Sub.H.B. No. 107 was not yet in effect, a position argued for by the dissent in *Voinovich II*, but to continue the status quo, except for programs not yet in place. In other words, all the changes already implemented under Am.Sub.H.B. No. 107 would continue to operate. But new programs were on hold. This provided Ohio citizens an opportunity to file for a referendum. If no referendum was filed or passed, all the many changes already undertaken would not be undone. If a referendum did succeed, less dismantling would have to occur if new programs had not yet been undertaken. The court in *Reed v. Rhodes* (N.D.Ohio 1979), 472 F.Supp. 603, summed up the effect of a stay when it held:

"A stay does not reverse, annul, undo, or suspend what has already been done or what is not specifically stayed. Nor does a stay impair the force, or pass on the merits of the orders of the trial court. A stay merely suspends the time required for the performance of the particular mandates stayed. The sole purpose of a stay is to preserve the status quo pending an appeal so that the appellant may reap the benefit of a potentially meritorious appeal." *Id*. at 605.

**{¶ 13}** The issue then becomes whether the subrogation amendment to R.C. 4123.93 had already been implemented. "Implement" is defined as "to carry out * * * accomplish, fulfill * * * to give practical effect to * * *." Webster's Third New International Dictionary (1986) 1134. Accordingly, we must determine if and when the subrogation subsections of R.C. 4123.93 were carried into effect.

**{¶ 14}** During the summer months prior to October 20, 1993, the original effective date of the non-appropriation provisions of Am.Sub.H.B. No. 107, the Bureau of Workers' Compensation prepared to implement the new subrogation rights set out in R.C. 4123.93 by researching the legal issues pertaining to these new rights. And when the non-appropriation provisions of Am.Sub.H.B. No. 107 went into effect on October 20, 1993, the bureau began pursuing subrogation claims. Prior to April, 8, 1994, the bureau had asserted subrogation rights in eleven

cases. Many other subrogation claims had been settled during this same period. This evidence indicates that the new subrogation subsections of R.C. 4123.93, as provided in Am.Sub.H.B. No. 107, were implemented prior to the April 8, 1994 stay issued in *Voinovich I*.

{¶ 15} Therefore, since the bureau had implemented the subrogation subsections of R.C. 4123.93 prior to April 8, 1994, the stay issued in *Voinovich I* did not delay its effective date. Accordingly, the effective date of R.C. 4123.93 is October 20, 1993, the original effective date of the non-appropriation provisions of Am.Sub.H.B. No. 107.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS and RESNICK, JJ., concur.

F.E. SWEENEY and PFEIFER, JJ., dissent and would hold that the effective date is July 7, 1994.

COOK, J., dissents.

_____

**COOK, J., dissenting.**

{¶ 16} With its decision in *Voinovich I*, this court interpreted Section 1c, Article II of the Ohio Constitution to read, "No law passed by the general assembly shall go into effect until [a *meaningful*] ninety days after it shall have been filed by the governor * * * ." The insertion of the word "meaningful" resulted from the conclusion that the decision in *Riffe* "foreclosed any meaningful opportunity for the citizens of this state to circulate a petition for a referendum on Am.Sub.H.B. No. 107." *State ex rel. Ohio AFL-CIO v. Voinovich* (1994), 69 Ohio St.3d 225, 236, 631 N.E.2d 582, 591. Though I would not wish to endorse the *Voinovich I* decision with respect to inserting a tardy "meaningful" overlay on the language of the Constitution, thereby creating a procedural situation resistant to normal prudential analysis (as shown by the oddity of *Voinovich II*), the court's decision in *Voinovich I* results in the nonappropriation provisions of the legislation at issue not being

constitutionally effective until the "meaningful" ninety days had elapsed—on July 7, 1994.

_____